128 F.3d 794
 MARYLAND CASUALTY COMPANY, Plaintiff,
v.
W.R. GRACE AND CO., Defendant-Appellee,
v.
GERLING-KONZERN ALLGEMEINE VERSICHERUNGS-AKTIENGESELLSCHAFT;
Highlands Insurance Company; and Home Insurance
Company, Defendants-Appellants.
 Nos. 96-9346L, 96-9348CON, 97-7214.
 United States Court of Appeals,
Second Circuit.
 Decided Nov. 10, 1997.
As Amended Nov. 18, 1997.
 
 Harry Lee, Wash., DC (Roger E. Warin, Steptoe & Johnson, Wash., DC; Jay Lenci, Oppenheimer, Wolff & Donnelly, New York City, on brief), for Home Insurance Co.
 Patrick J. Dwyer, New York City (Polstein,Ferrara & Dwyer, New York City, on brief), for Highlands Insurance Co.
 R.Nicholas Gimbel, Philadelphia, PA (Richard M. Bernstein, Kevin J. Kotch, Hoyle, Morris & Kerr, Philadephia, PA, on brief), for W.R. Grace and Co.
 (Anders Enemark, Standard Weisberg, New York City, submitted papers for Gerling-Konzern Allgemeine Versicherungs-Aktiengesellschaft.)
 Before: WINTER, Chief Judge, NEWMAN and CARDAMONE, Circuit Judges.
 JON O. NEWMAN, Circuit Judge.
 
 
 1
 These consolidated interlocutory appeals concerning insurance for asbestos property damage claims present two issues: (1) whether the insured gave timely notice to its excess insurers, and (2) whether the insured's statistical evidence of the probability that asbestos installations occurred within the insurers' policy periods sufficed to defeat the insurers' motion for partial summary judgment based on the absence of evidence of precise dates of covered occurrences. In No. 96-9346(L), Gerling-Konzern Allgemeine Versicherungs-Aktiengesellschaft ("Gerling") and Highlands Insurance Company ("Highlands") (collectively "the Insurers") appeal from the October 1, 1996, partial declaratory judgment of the District Court for the Southern District of New York (John S. Martin, Jr., Judge) to the extent that the judgment incorporated a prior ruling that struck the Insurers' defense of lack of timely notice. In No. 97-7214, Gerling and Home Insurance Company ("Home") appeal from the same judgment to the extent that it incorporated a prior ruling that denied a motion for partial summary judgment on the issue of lack of evidence of installation dates.
 
 
 2
 We dismiss the appeal in No. 97-7214, and affirm in No. 96-9346(L).
 
 Facts
 
 3
 This appeal arises out of a declaratory judgment action brought in 1988 by Maryland Casualty Company, a primary insurance carrier, against its insured, W.R. Grace and Co. ("Grace"), as well as Grace's other insurance carriers, including those in the present appeal. All the original parties, except those participating in this appeal, have settled.
 
 
 4
 Grace was a manufacturer and distributor of asbestos products. It ceased this portion of its operations in 1973, but continued thereafter to purchase liability insurance. Grace has stipulated that it will not seek coverage for asbestos property damage claims under any policy that commenced after June 1978. Beginning in the late 1970s, hundreds of asbestos property damage claims were asserted against Grace. However, the total of claims for the periods of the Insurers' policies, as of 1995, was several millions of dollars below the levels at which these excess policies would be called upon for payment. In fact, the total property damage payments to date have been very small. Nevertheless, the Insurers apprehend that in the coming years, claims against Grace for installations made during the policy periods will exceed Grace's primary coverage and require payment under the excess policies.
 
 
 5
 At an earlier stage of the present litigation, this Court held that an insurer could be held liable only for the injuries that occurred during the term of an insurer's policy, see Maryland Casualty Co. v. W.R. Grace & Co., 23 F.3d 617, 624-26 (2d Cir.1993), and that asbestos-related injuries to buildings occurred at the time that asbestos was installed, see id. at 626-28.
 
 
 6
 Upon return to the District Court, Grace moved to strike the Insurers' defense of lack of timely notice, and American Re-Insurance Company ("American Re"), joined by Home, moved for partial summary judgment exonerating them of coverage with respect to installations for which Grace was unable to supply a date (evidencing an occurrence within a pertinent policy period). The Insurers opposed Grace's motion on the ground that Grace knew at least by 1983 that it was likely to experience property damage liability claims in excess of its primary layer of coverage, yet did not notify its excess insurers until 1987. Grace contended that it had no obligation to give notice until it became aware of "occurrences" that might create liability under the Insurers' policies, that "occurrences" are installations of asbestos, and that it indisputably gave notice of such "occurrences" as soon as it was aware of them.
 
 
 7
 Grace opposed American Re's motion on the ground that a statistical analysis satisfied, at least for purposes of opposing partial summary judgment, whatever burden it had under Maryland Casualty concerning placement of installations within the policy periods of its insurers. The analysis essentially made projections, based on the number and square footage of installations for which dates were known, in order to estimate the number and square footage of installations that occurred within the various relevant time periods. Though American Re has settled with Grace, the installation date issue remains alive, at least with respect to Home and Gerling.[1]
 
 
 8
 The District Court granted Grace's motion in an oral ruling on April 12, 1996, and denied American Re's motion in Part II(C) of a written ruling on March 12, 1996. In a written opinion dated September 27, 1996, the Court included reconfirmation of these two rulings, ordered entry of partial judgment under Fed.R.Civ.P. 54(b) with respect to the ruling that granted Grace's motion to strike the Insurers' defense of late notice, and certified that ruling and the ruling denying partial summary judgment on the issue of installation dates for interlocutory appeal under 28 U.S.C. § 1292(b). A judgment incorporating the September 27, 1996, rulings was entered on October 1, 1996, a timely notice of appeal was filed, and we granted a petition to appeal what was identified as "the partial declaratory judgment entered October 1, 1996."
 
 Discussion
 I. Appellate Jurisdiction
 
 9
 Whether or not the District Court's oral ruling of April 12, 1996, which rejected the Insurers' defense of late notice, was appropriate for entry of a Rule 54(b) judgment, that ruling was reconfirmed in the Court's September 27 opinion and incorporated in the October 1 judgment for which a section 1292(b) appeal was granted. Consideration of the issue adjudicated in the April 12, 1996, ruling has disclosed no reason not to entertain the section 1292(b) appeal, to the extent that the appeal seeks review of that ruling.
 
 
 10
 However, the situation is different with respect to the District Court's written ruling of March 12, 1996, which denied partial summary judgment for lack of evidence of precise installation dates. Since that ruling would not support a Rule 54(b) judgment, the District Court endeavored to have it reviewed only via the section 1292(b) route. After we granted the application for a section 1292(b) appeal of the October 1, 1996, partial judgment, Grace sought clarification to resist what it understood was the appellants' attempt to remove from their interlocutory appeal the "issue" concerning the evidence of installation dates. We issued no clarification because section 1292(b) permits appeal of an order, not discrete issues or questions, see Isra Fruit Ltd. v. Agrexco Agricultural Export Co., 804 F.2d 24, 25 (2d Cir.1986), and the section 1292(b) appeal was granted with respect to the judgment entered on October 1.
 
 
 11
 With the matter now available for more thorough scrutiny, it is apparent that the appellants were not endeavoring to carve out an "issue," but instead to pursue an interlocutory appeal only from the April 12 ruling concerning notice, and not from the March 12 ruling concerning evidence of dates of installation. The fact that both rulings were incorporated in the October 1 judgment did not preclude any party adversely affected by that judgment from seeking section 1292(b) review of only one of those rulings.
 
 
 12
 It is now apparent that the ruling on evidence of dates of installation is not appropriate for section 1292(b) certification. The difficulty with interlocutory review of the March 12 ruling at this point is that the ruling is extremely preliminary and unfocused, and leaves for later determination many of the matters about which the parties are currently in dispute on this appeal. For example, the Insurers contend that Grace's statistical analysis is flawed in numerous respects. Whether or not it is, the District Court has made no ruling as to its credibility or weight. Indeed, Judge Martin has not yet determined what burden Grace will have at trial with respect to dates of installation. As he wrote in his March 12 ruling,
 
 
 13
 the Court need not determine at this time how the burden of proof issue will be presented to the jury, i.e., whether the jury will be told that Grace has the burden to prove only that it had a reasonable basis for allocating the loss to a particular year, or alternatively that Grace has the burden to prove by a preponderance of the evidence that installation of asbestos actually occurred in the year at issue.
 
 
 14
 March 12, 1996, Ruling at 27-28. Moreover, at this point we do not know what evidence, in addition to its statistical analysis, Grace will rely upon to satisfy whichever burden the District Court imposes, or what evidence the Insurers will present both to challenge the statistical analysis and to rebut Grace's other evidence. And, though each side makes allegations, we do not know what evidence they will present at trial as to the difficulty, earlier or now, of ascertaining precise or even approximate installation dates. All we know at this point is that the District Court has ruled that Grace can defeat a motion for partial summary judgment, sought for lack of evidence that installations occurred during relevant policy periods, by proffering a statistical analysis, without particularized evidence as to the precise installation dates of some of the buildings for which claims have been settled.[2] We decline to adjudicate the correctness of such a preliminary and unfocused ruling. Accordingly, to the extent that the appeal seeks review of Part II(C) of the March 12 ruling denying the motion of American Re for partial summary judgment, we dismiss the appeal on the ground that a section 1292(b) appeal was improvidently granted.
 
 II. The Merits of the April 12 Ruling
 
 15
 The April 12, 1996, ruling, granting Grace's motion to strike the Insurers' defense of late notice of occurrences, is challenged on appeal by Gerling and Highlands. We consider first the language in the relevant provisions of their policies.
 
 
 16
 A. Applicable policy language. Gerling's policy contains a notice provision with the following language:
 
 
 17
 Whenever the Assured may reasonably conclude that an occurrence covered hereunder involves injuries or damages which, in the event that the Assured should be held liable, is likely to involve this Policy, notice shall be sent ... as soon as practicable....
 
 
 18
 Joint Appendix 905-06 (citing a Lloyd's policy).[3]
 
 
 19
 With respect to Highlands, there is an initial dispute as to which notice provision is applicable. The Highlands policy, as originally issued, included the following language:
 
 
 20
 Whenever the Insured has information from which they [sic ] may reasonably conclude that an occurrence covered hereunder involves injuries or damage which, in the event that the Insured shall be held liable, is likely to involve this Policy, notice shall be sent ... as soon as practicable....
 
 
 21
 On February 21, 1975, Grace's insurance broker wrote to Highlands requesting four changes, and supplying specific language for each change. The third change was to amend the notice of occurrence provision, and the fourth change requested a so-called "follow form" endorsement, adopting the language of a specific policy issued by Unigard Mutual Insurance Company ("Unigard").
 
 
 22
 In compliance with the February 21 request, Highlands issued four endorsements on March 17, 1975, incorporating the requested language with only trivial alterations of wording and punctuation. Endorsement No. 5 read as follows:
 
 
 23
 In the event of an occurrence, claim or suit, written notice to the Company will be given as soon as practicable after an occurrence, claim or suit is known....
 
 Endorsement No. 6 read as follows:
 
 24
 It is agreed and understood that, except with respect to policy term, premium and limit of liability, this policy is hereby amended to follow all the terms, conditions, definitions, and exclusions of the first layer umbrella policy issued by Unigard Mutual Insurance Company, Policy No. 1-2517, and all renewals and replacements thereof. This endorsement supersedes all the terms, conditions, definitions and exclusions originally issued with the policy including any amendatory endorsements thereof.
 
 
 25
 The cited Unigard policy contains the following language:
 
 
 26
 When an occurrence takes place which, in the opinion of the insured, involves or may involve liability on the part of the company, prompt written notice shall be given....
 
 
 27
 Grace contends that Endorsement No. 6, by superseding all the terms and conditions of the policy, including amendatory endorsements, overrides the notice language contained not only in the policy as issued, but also in Endorsement No. 5, with the result that the operative notice provision is the incorporated language of the Unigard policy. Highlands responds that Endorsement No. 6 does not override the other endorsements simultaneously issued on March 17, with the result that the operative notice provision is the language of Endorsement No. 5.
 
 
 28
 Grace has the better of the argument based solely on text, but ultimately Highlands has the only position that makes sense. As Grace points out, Endorsement No. 6 explicitly states that it supersedes all conditions of the original policy "including any amendatory endorsements." Endorsement No. 6 (emphasis added). Endorsement No. 5 is an "amendatory endorsement." Highlands endeavors to avoid the literal force of Endorsement No. 6 by contending that "it applies only to the terms, conditions, definitions, exclusions and amendatory endorsements 'originally issued with the policy.' " Brief for Appellant Highlands at 13 (emphasis in brief but not in Endorsement No. 6, which is quoted). This response encounters two problems. First, it shifts the words "amendatory endorsements" to precede the words "originally issued with the policy," whereas Endorsement No. 6 places them after those words. Second, it gives an odd meaning to "amendatory"; though some endorsements (those developed by the insurer after it prepared the form later used for the policy as issued) could be part of the policy as originally issued, an "amendatory" endorsement would seem to be an endorsement that amends the policy as originally issued.
 
 
 29
 Nevertheless, Grace's textual argument must be rejected because it makes no sense in the circumstances of this case. When, on the same day, Grace asks Highlands to add Endorsement No. 5 and Endorsement No. 6, and Highlands thereafter complies by simultaneously adding both endorsements, the only reasonable interpretation of the amended Highlands policy is that Endorsement No. 6 follows the form of the Unigard policy except to the extent that Endorsement No. 5 provides otherwise.
 
 
 30
 B. Construction of applicable policy language. The dispute on the merits of the notice provisions of both the Gerling and the Highlands policies concerns the word "occurrence" used in each provision. Grace contends, and Judge Martin agreed, that "occurrence" in the context of a liability policy providing insurance for property damage losses means what this Court said it means in Stonewall Insurance Co. v. Asbestos Claims Management Corp., 73 F.3d 1178 (2d Cir.1995), where we construed the word for purposes of resolving a dispute concerning per-occurrence deductibles. In Stonewall, the insured, seeking to pay only one deductible, contended that all of the losses arose out of a single occurrence--the insured's decision to manufacture and sell asbestos-containing products. The insurers, seeking multiple deductibles, contended that each installation of the insured's product in a building was a separate occurrence. We agreed with the insurers. Stonewall, 73 F.3d at 1212-14.
 
 
 31
 In the pending appeal, we agree with Grace and Judge Martin that "occurrence" in the notice provisions means "installation," just as it did in Stonewall. Terms in a document, especially terms of art, normally have the same meaning throughout the document in the absence of a clear indication that different meanings were intended. See 4 Samuel Williston & Walter H.E. Jaeger, A Treatise on the Law of Contracts § 618, at 715-716 (3d ed.1961); cf. Department of Revenue v. ACF Industries, Inc., 510 U.S. 332, 342, 114 S.Ct. 843, 849, 127 L.Ed.2d 165 (1994) (same rule of construction with respect to statutes). However, equating "occurrence" with "installation" does not completely resolve the pending controversy. Dispute remains as to which occurrences precipitate Grace's duty to notify the Insurers.
 
 
 32
 In advancing their contentions on the notice issue, both parties assert rather extreme positions. The Insurers contend that "an insured is required to provide notice to an excess insurer when the circumstances known to the insured would have suggested to a reasonable person the possibility of claims against the insured in an amount sufficient to reach the excess policy assuming the insured were held liable on the claims." Insurers' Proposed Jury Instruction No. 6. This broad position could require notice prior to any occurrence, a position at odds with either the Gerling or the Highlands notice provision. On the other hand, Grace advances too narrow a position when it says that notice is required only when Grace becomes aware of a specific occurrence (i.e., an installation) that "would" give rise to a claim. See Brief for Appellee at 51.
 
 
 33
 Our resolution of the dispute must begin with the language of the notice provisions. The Gerling provision requires notice of an "occurrence" that "involves" damage that is "likely" to "involve" Gerling's excess policy. The Highlands provision requires notice of an "occurrence," without further words of limitation. Once it is accepted, as we hold, that "occurrence" means "installation," just as it did in Stonewall, the wording of the Gerling provision is indisputably limited to installations involving damage claims that are likely to exceed Grace's primary coverage and require payment under Gerling's excess policy. However, the only damage claims for which Gerling might have to respond are those arising from occurrences during Gerling's policy period. Gerling (through its adoption of Continental's briefs) does not contend that Grace failed to notify it of any installation occurring during the Gerling policy period that might involve Gerling's policy.
 
 
 34
 The situation with respect to the notice provision of the Highlands policy is not so clear-cut. On its face, the notice provision of Endorsement No. 5 requires notice of an occurrence, without a limiting reference to the Highlands policy. However, just as Highlands is entitled to a common sense interpretation of Endorsement No. 6 (which makes Endorsement No. 5 applicable in the first place), so Grace is entitled to a common sense interpretation of Endorsement No. 5 that limits it to occurrences during the term of the Highlands policy. The notice provision requires notice of an "occurrence, claim or suit," and obviously the insurer is not requiring its insured to give notice of suits that do not implicate the insurer's policy. Notice of "suit" must mean notice of suit for recovery of damages for which the insurer might have to respond, and the same construction applies to notice of "occurrence." Though Endorsement No. 5 omitted the language of the original Highlands policy explicitly confining the notice requirement to an occurrence involving damages "likely to involve this Policy," the endorsement added a requirement of notice of a claim or suit, thereby making clear that the listed events--occurrence, claim, or suit--were only those events likely to give rise to damages that might implicate the Highlands policy. Highlands does not contend that Grace failed to give timely notice of any such occurrence.
 
 
 35
 The Insurers' most plausible position appears to be that once Grace became aware of the likelihood that some installations of asbestos would precipitate property damage claims and also became aware of any occurrences (i.e., installations) that might give rise to damage claims under any of its policies, it should have realized that the asbestos-containing products it sold during and just prior to the terms of the Insurers' policies would be installed somewhere during the policy periods, thereby creating the risk of property damage claims for which the Insurers might have to respond. To whatever extent this is the Insurers' position, they enlist cases like Olin Corp. v. Insurance Company of North America, 966 F.2d 718 (2d Cir.1992) (''Olin II"), Olin Corp. v. Insurance Company of North America, 929 F.2d 62 (2d Cir.1991) ("Olin I "), aff'g, 743 F.Supp. 1044 (S.D.N.Y.1990), and Commercial Union Insurance Co. v. International Flavors & Fragrances, Inc., 822 F.2d 267 (2d Cir.1987). For example, in Commercial Union, we stated that the general "test for determining [under New York law] whether the notice provision has been triggered is whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim." 822 F.2d at 272. From this statement, the Insurers argue that Grace was aware, at least by 1983, of circumstances that reasonably suggested the possibility of claims implicating the Insurers' policies. But the circumstances that the Insurers rely on are occurrences and claims within time periods of other Insurers' policies. Commercial Union does not require giving notice of such occurrences. The occurrence in that case was the report of injuries occurring within the time period of the applicable insurance policy. Similarly, Olin I and Olin II each involved one continuous occurrence (environmental damage) within the relevant policy periods.
 
 
 36
 Under the Insurers' expansive view of a notice requirement, an insured would have to give notice whenever it is aware of circumstances, happening outside the time period of the relevant policy, that create a reasonable possibility that an occurrence might happen within the policy period for which some claims might later be made. Such circumstances, i.e., those creating the risk that there might be "occurrences" within the policy period, are the reason an insured buys insurance; they are not an occasion for giving notice before an insured is or perhaps should reasonably be aware of an "occurrence" covered by the policy.
 
 
 37
 In the absence of any evidence to support a claim that Grace failed to give the Insurers timely notice of an installation of which it was aware that had occurred during the relevant policy periods, the District Court properly struck the Insurers' defense based on lack of timely notice.
 
 Conclusion
 
 38
 In No. 97-7214, the appeal (taken from Part II(C) of the March 12, 1996, written ruling) is dismissed; in No. 96-9346(L), the April 12, 1996, oral ruling, striking the Insurers' defense of late notice of occurrences, is affirmed.
 
 
 
 [1]
 In the District Court, Home explicitly joined American Re's motion. The installation date issue was initially briefed in this Court only by Continental Casualty Company ("Continental"). However, Continental's brief primarily urges this Court not to adjudicate the correctness of the District Court's March 12, 1996, ruling denying American Re's motion, because, Continental contends, its request for exoneration differs significantly from that of American Re. Only if this Court elects to review the March 12 ruling does Continental urge us to consider its merits and reject it. After Continental settled with Grace, Home filed a reply brief, urging us to reject the March 12 ruling. Gerling, by relying on Continental's brief, presumably wishes to have the benefit of Continental's arguments on this issue, including the primary request not to review the March 12 ruling
 
 
 [2]
 Though American Re's motion was filed with respect to settled and pending claims, Judge Martin's ruling denying partial summary judgment applies only to closed claims
 
 
 [3]
 The briefing of this appeal has created a slight awkwardness in relating Gerling's contention on the notice issue to the language of its policy. Gerling has not filed a brief, electing instead to rely on the briefs of Continental. See Letter from Anders Enemark to Clerk's Office (Nov. 6, 1996). Continental settled its dispute with Grace prior to oral argument. Continental's briefs argue the notice issue with reference to its policy, which contains the following language:
 WHEN AN OCCURRENCE TAKES PLACE WHICH, IN THE OPINION OF THE INSURED, INVOLVES OR MAY INVOLVE LIABILITY ON THE PART OF [CONTINENTAL], PROMPT WRITTEN NOTICE SHALL BE GIVEN BY OR ON BEHALF OF THE INSURED TO [CONTINENTAL].
 Our disposition of the notice issue with respect to Gerling is unaffected by wording variations in the notice provisions of the Gerling and Continental policies.